UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


GAE KELLEHER,

               Plaintiff,

     v.

BANK OF THE WEST, a California corporation,

               Defendant.

_____

Civil No. 07-1002-HA


ORDER
AND OPINION

HAGGERTY, Chief Judge:

      Plaintiff alleges that her former employer, defendant Bank of the West, discriminated and

retaliated against her in violation of 29 U.S.C. § 621 *et seq.* (Age Discrimination in Employment

Act), 42 U.S.C. § 2000e *et seq.* (Title VII), and O.R.S. 659A.  Plaintiff also brings state claims

for constructive discharge and intentional infliction of emotional distress.

   PAGE 1 - OPINION AND ORDER

Defendant filed a Motion for Summary Judgment [20] and oral argument was heard on

August 4, 2008.  For the following reasons, defendant's motion is granted in part, and denied in

part.

I.      **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).

On summary judgment, the court must view the facts and draw inferences in the manner

most favorable to the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962).  Defendant, the moving party, bears the initial burden of demonstrating the absence of a

genuine issue of material fact for trial, but it need not disprove the other party's case.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  When the non-moving party bears the burden

of proving the claim or defense, the moving party can meet its burden by pointing out the

absence of evidence of a genuine issue of material fact from the non-moving party.  *Musick v.*

*Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the "adverse party may not rest upon the mere

allegations or denials of the adverse party's pleading, but the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49.  There

must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).

II.    **BACKGROUND**

The following facts are undisputed unless otherwise noted and are stated in the light most favorable to plaintiff.

Plaintiff was employed by defendant from September 16, 2004, to December 27, 2006. She worked as a Customer Services Representative ("CSR") at a bank branch in Hillsboro, Oregon. Plaintiff was 52-years-old when hired by Kurt Strobel, the branch's Customer Service Manager.

Among plaintiff's co-workers were Veena Katoch, Slobobodonken Jovanovic, Gina Marlatt, and Sarah Fast. Fast was a CSR in September 2004, before being promoted to Assistant Customer Service Manager in June 2005. Plaintiff reports that she and Fast initially "got along well." Pl. Depo. 81:7.

Soon after plaintiff started working for defendant, however, Fast allegedly made discriminatory comments about Katoch being "too old to be working there . . . too old to change . . . [and] too old to work in the public [area] . . . ." Pl. Depo. 80:7-11. Plaintiff asserts that, in the spring of 2005, Fast and Marlatt asked her to complain about Katoch and Jovanovic not doing their share of the work. Fast allegedly told plaintiff that Katoch needed to be fired because

she was too old to work at the bank and because her accent made conversation with customers difficult.[1]

Plaintiff told her supervisor, Strobel, that Fast was trying to get Katoch and Jovanovic fired. In doing so, plaintiff recounted Fast's comments about Katoch and Jovanovic being too old. It is unclear from the record what, if anything, defendant did in response to this alleged conspiracy.

Plaintiff alleges that during her employment she was subjected to offensive sexual conduct on an ongoing basis. Plaintiff reports witnessing or overhearing Fast engage in the following behavior: discussing with a male employee whether to buy blue panties, working in a manner that exposed her underwear, commenting on the sexual preference of another employee, and asking Strobel how her butt looked. On one occasion, plaintiff observed Strobel slapping Fast's bottom. Plaintiff overheard routine name calling between Fast and Marlatt, with the women referring to each other as "ho," "whore," "bitch," and "slut." Pl. Depo. 84:7-85:3, 141:14-143:22. Fast also drew a picture of a penis on Marlatt's wrist and then made a joke about it.

Some offensive comments were also directed at plaintiff. Plaintiff reports that Fast and Marlatt indicated she "smell[ed] like old pee," dressed "old and frumpy," and was "too old to wear sleeveless tops because [you] get loose, saggy skin from age." Pl. Depo. 144:19-22. Plaintiff overheard a conversation between Fast and a co-worker about "yellow, crooked teeth" that plaintiff felt was directed at her. Pl. Depo. 146:1-5. Fast and Marlatt also told plaintiff that her count was short one day; according to plaintiff, her co-workers knew she had previously

---

[1] Although Fast denies making these comments, for purposes of this motion they are accepted as true.

PAGE 4 - OPINION AND ORDER

been disciplined for cash shortages and were trying to make her cry. In addition, plaintiff alleges that Fast exposed her to public humiliation by treating her discourteously in front of customers.

Plaintiff reported all of these incidents to Strobel. Despite her complaints, Fast's behavior apparently continued unabated. After numerous complaints to management, Strobel eventually told plaintiff that she needed to stop complaining because she seemed like a "chronic bitch." Pl. Decl. ¶ 9.

George Lekas started as general manager of the Tanasbourne branch on June 27, 2005. After he started, plaintiff repeated to Lekas the same complaints about her co-workers' behavior that she had previously made to Strobel.

Defendant's employee handbook prohibited open toed shoes, visible tattoos, sleeveless tops, denim, and required that women wear stockings. Plaintiff alleges that Strobel enforced the dress code against plaintiff and other tellers but not against Fast. When asked by plaintiff why she was allowed to wear prohibited items, Fast replied that "younger women can get away with wearing sleeveless tops, but the older you get the worse they look and you can't get away with it." Pl. Decl. ¶ 16.

During her first year of employment, plaintiff received three written disciplinary notices for cash shortages and was placed on probation. At her annual review, in September 2005, she received a score of 2.45 on her performance evaluation. This was a "below expectations" merit rating and it prohibited plaintiff from obtaining a salary increase.

In February 2006, plaintiff had another cash shortage and was given a fourth performance improvement notice ("PIN"). As a result of this PIN, plaintiff was again put on probation. Plaintiff believes that Fast was responsible for the February 2006 shortage. She informed management that she believed Fast had accessed her cash drawer and caused the discrepancy in

PAGE 5 - OPINION AND ORDER

an attempt to get her fired.  Plaintiff asked that Strobel prevent Fast from accessing or auditing plaintiff's cash drawer.

In mid-April 2006, plaintiff was disciplined for a non-customer complaint.  When plaintiff met with management to discuss this complaint, Lekas and Strobel were allegedly abusive and bullying.  Reduced to tears, plaintiff began complaining of chest pains.  She spent the next six weeks on a stress-related medical leave.

After she returned to work, some of plaintiff's co-workers informed Lekas that plaintiff was speaking negatively about the company and its staff.  Plaintiff believes that Fast may have asked these co-workers to complain about her, just as Fast had previously asked plaintiff to complain about a co-worker.  In response to these co-worker complaints, Lekas gave plaintiff a "final" written notice: plaintiff was given six months probation and told that if she had any additional problems she could be terminated.

Soon after the July final notice, Michelle Charlton, a regional Human Relations supervisor, presented a training DVD on how to be courteous and respectful to co-workers.

In October 2006, plaintiff learned that Fast had asked a co-worker, Sheetal Sanjana, to antagonize plaintiff.  According to Sanjana, Fast had jokingly asked that she bait plaintiff into saying something inappropriate that would get her fired.  Plaintiff reported this incident to management.

Since she was on final notice, plaintiff was not eligible for a bonus in November 2006.  When she learned she would not be receiving a bonus, plaintiff became upset.  Plaintiff was particularly disturbed since she was on final notice due to the February 2006 cash shortage, an event she believed Fast orchestrated.  Lekas asked plaintiff to step outside, where they proceeded to have a heated conversation in a parking lot.  During this conversation, plaintiff said that

PAGE 6 - OPINION AND ORDER

defendant's failure to do anything about the alleged discrimination was "crap" and "bullshit."  Pl.

Decl. ¶ 32.  Soon after this conversation ended, Lekas sent plaintiff home for the day.

The next day–December 1, 2006–plaintiff met with Charlton to discuss her conversation

with Lekas and plaintiff's concerns about ongoing workplace harassment.  On December 4 and 5,

Charlton conducted a "climate survey" at the bank, interviewing the staff.  As a result of this

investigation, Fast was given a PIN for drawing a penis on Marlatt's wrist.  Plaintiff also

received an additional notice for insubordination during her parking lot conversation with Lekas.

Angered by her perceived ill treatment, plaintiff quit her job.

## III.    ANALYSIS

Plaintiff has brought the following claims: (1) hostile work environment, (2) disparate

treatment, (3) retaliation, (4) wrongful discharge, and (5) intentional infliction of emotional

distress.

### 1.    Plaintiff's Hostile Work Environment Claim

Plaintiff asserts that defendant subjected her to a hostile work environment because of

her age and sex.  To make a prima facie case of hostile work environment, plaintiff must show

that (1) she was subjected to verbal or physical conduct of a sexual or ageist nature; (2) this

conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

conditions of plaintiff's employment and create an abusive work environment.  *Craig v. M & O

Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007); *see Crawford v. Medina Gen. Hosp.*, 96

F.3d 830, 834 (6th. Cir. 1996) (concluding it is a "relatively uncontroversial proposition" that the

Age Discrimination in Employment Act ("ADEA") allows hostile work environment claims).

To prove that a working environment is hostile, plaintiff must establish that it was both

subjectively and objectively abusive, with objective hostility determined "by examining the

PAGE 7 - OPINION AND ORDER

totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Craig*, 496 F.3d at 1054.

### A.    Harassment Because of Age

Plaintiff's prima facie showing turns on whether or not the alleged actions were pervasive or severe enough to amount to "a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Supreme Court has cautioned that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citations and quotations omitted). In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* (quotation omitted).

Here, plaintiff's allegations of harassment based on age are not sufficiently severe or pervasive. Plaintiff alleges that Fast and Marlatt told her that she "smell[ed] like old pee," dressed "old and frumpy," and was "too old to wear sleeveless tops because [you] get loose, saggy skin from age." Pl. Depo. 144:19-22. Plaintiff overheard a conversation between Fast and a co-worker about "yellow, crooked teeth" that plaintiff felt was directed at her. And, when asked by plaintiff why she was allowed to ignore the dress code, Fast allegedly replied that "younger women can get away with wearing sleeveless tops, but the older you get the worse they look and you can't get away with it." Pl. Decl. ¶ 16.

PAGE 8 - OPINION AND ORDER

The evidence introduced by plaintiff is insufficient to withstand summary judgment. Although plaintiff has alleged that co-workers continuously harassed her, only a small portion of the allegedly discriminatory conduct focused on her age.  And, while several of Fast's and Marlatt's comments support an ADEA harassment claim, the comments as a whole are not sufficiently severe or numerous to create an abusive environment.  Accordingly, the court concludes that the ageist comments in the record constitute "simple teasing" and not illegal harassment.

### B.    Harassment Because of Sex

"Sexual harassment, if committed or tolerated by the employer, becomes a new and onerous term of employment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). However, workplace harassment is not automatically discrimination "merely because the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  In every case, a plaintiff must show that harassment was "because of . . . sex." *Nichols*, 256 F.3d at 872.  Accordingly, the plaintiff must always prove that the conduct at issue was "not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Oncale*, 523 U.S. at 81 (internal quotations omitted).  "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring).

The bulk of the alleged sexual harassment was perpetrated by Fast.  These incidents include: Fast drawing a penis on Marlatt's wrist, Fast exposing her underwear and discussing purchasing underwear with co-workers, and Fast asking a male supervisor how her butt looked.

Plaintiff also points out the crude terms that Fast and Marlatt used to describe each other, including "ho," "whore," and "slut."

Having reviewed the record, the court concludes that Fast's actions and words were insufficiently severe or pervasive to create an abusive work environment. In reaching this conclusion, the court finds it significant that plaintiff was not the target of the alleged sexual harassment. At no point has plaintiff alleged that Fast or any other co-worker ever called plaintiff a "whore," "slut," or similar term. Rather, plaintiff overheard her female co-workers using these terms towards one another in a joking fashion. Similarly, plaintiff has not alleged that she was the target of any sexual graffiti or drawings. Rather, plaintiff saw a small drawing of a penis that Fast had drawn on Marlatt's wrist, which Marlatt decided to show co-workers. Although such language and conduct is both immature and inappropriate, a reasonable person in plaintiff's position would not conclude that they were the object of sexual harassment.

It is also significant that both Fast and Marlatt are female. The court recognizes that "discrimination can take place between members of the same sex, not merely between members of the opposite sex." *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1067 (9th Cir. 2002). In cases of same-sex harassment, however, plaintiffs must still demonstrate that their "sex" was responsible for disparate treatment. *See Nichols*, 256 F.3d at 874 ("Sexual harassment is actionable under Title VII to the extent it occurs 'because of' the plaintiff's sex."). The Supreme Court has explained there are several methods for establishing discriminatory same-sex harassment. *Oncale*, 523 U.S. at 80-81. For instance, discrimination occurs when a gay harasser is motivated by sexual desire or when a female victim is harassed in "such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Id.* at 80.

PAGE 10 - OPINION AND ORDER

The Ninth Circuit has also interpreted the "because of . . . sex" requirement in cases of same-sex harassment.  In *Rene*, the Ninth Circuit concluded that harassment occurred where the male plaintiff was "repeatedly grabbed in the crotch and poked in the anus [by male harassers], and [] singled out from his other male co-workers for this treatment."  305 F.3d at 1067.  The Ninth Circuit has also found that harassment was "closely linked to gender," where a male plaintiff was taunted by his male co-workers for being too effeminate.  *Nichols*, 256 F.3 at 874.

Plaintiff has not demonstrated that Fast harassed her "because of . . . sex."  Unlike the plaintiff in *Nichols*, plaintiff has neither argued nor shown that she was taunted for her gender nonconformity.  Unlike the plaintiff in *Rene*, plaintiff has not shown she was singled out for treatment or subjected to offensive sexual touching.  Furthermore, plaintiff has not shown that Fast was motivated by sexual desire or by general hostility to the presence of women in the workplace.  In fact, Fast's alleged co-tormentor is Marlatt, another woman.

Just because Fast's behavior was in some respects "sexual" does not mean plaintiff experienced sexual harassment.  The Supreme Court has clarified that Title VII does not function as a "general civility code."  *Oncale*, 523 U.S. at 80.  Employees like plaintiff are not guaranteed a sanitized workplace; rather, they are protected against discriminatory treatment on account of their sex.  Having reviewed the record, the court concludes that plaintiff has not demonstrated the necessary nexus between her "sex" and the conduct of her female co-workers.

Plaintiff also bases her sexual harassment claim on two incidents involving Strobel, a male supervisor.  On one occasion, plaintiff witnessed Strobel slapping Fast's bottom.  On another, Strobel cautioned plaintiff that she needed to stop complaining because she seemed like a "constant bitch."  Although they are probative of sexual harassment, these two incidents are insufficient to satisfy the severe or pervasive component of a sexual harassment claim.

PAGE 11 - OPINION AND ORDER

2.        **Plaintiff's Disparate Treatment Claim**

Plaintiff alleges that she was discriminated against based on her age and gender, in violation of the ADEA, Title VII and O.R.S. 659A.030.[2]  For claims of disparate treatment based on age or gender, a plaintiff must first present a prima facie case of discrimination, which creates a presumption of discrimination.  *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996).

To establish a prima facie case, plaintiff must demonstrate that: (1) plaintiff is a member of a protected class, (2) plaintiff was performing her job according to her employer's legitimate expectations, (3) plaintiff was subject to an adverse employment action, and (4) similarly situated persons outside of her protected class were treated more favorably.  *Chuang v. Univ. of Cal.*, 225 F.3d 1115, 1123 (9th Cir. 2000).

If plaintiff makes a prima facie case, the burden of production then shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action.  *Id.* at 1123-24.  If the employer meets this burden of production, "the plaintiff must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Id.* at 1124 (internal quotations omitted).

Plaintiff's disparate treatment claim fails because she cannot make the requisite prima facie showing.  Specifically, plaintiff cannot show that she suffered any adverse employment actions.  At oral argument, counsel for plaintiff conceded that the series of PIN's issued to

---

[2] Employment discrimination claims brought in federal court under O.R.S. Chapter 659A are analyzed under the same framework used to analyze disparate treatment claims under federal law.  *Williams v. Fed. Ex. Corp.*, 211 F. Supp. 2d 1257, 1261 (D. Or. 2002).

PAGE 12 - OPINION AND ORDER

plaintiff were not themselves actionable. Plaintiff, however, argues that defendant constructively discharged plaintiff in December 2006, thus satisfying the adverse employment action requirement.

"A constructive discharge occurs when, looking at the totality of the circumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.'" *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.1987) (quoting *Satterwhite v. White*, 744 F.2d 1380, 1381 (9th Cir. 1984)). A plaintiff alleging a constructive discharge must show some "aggravating factors, such as a continuous pattern of discriminatory treatment." *Satterwhite*, 744 F.2d at 1382 (internal marks and citation omitted); *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (observing that courts "set the bar high" for claims of constructive discharge because federal antidiscrimination law encourages employees and employers to work together in their existing employment relationship). Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury. *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir.1989).

Plaintiff alleges that, due to the ongoing harassment based on age and sex that she experienced, plaintiff had no choice but to quit in December 2006. The court has already ruled that plaintiff cannot establish her hostile work environment claims, a finding that is fatal to plaintiff's constructive discharge claim. Since constructive discharge is plaintiff's only way of proving an adverse employment action, plaintiff cannot make out a prima facie case of disparate treatment.

### 3.    Plaintiff's Retaliation Claim

Plaintiff alleges that she faced retaliation for complaining to Strobel and Lekas about numerous incidents of age and sex discrimination.  To make out a prima facie case of retaliation, plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment action.  *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003). Thereafter, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action.  Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext.

Plaintiff has made out a prima facie case of retaliation.  There is ample evidence that plaintiff engaged in protected activity: throughout her time at Bank of the West, plaintiff consistently reported to management instances of alleged discriminatory conduct.  Furthermore, plaintiff was issued several PIN's and warnings by defendant.  The Ninth Circuit takes an expansive view of the type of actions that can be considered adverse employment actions.  *Ray v. Henderson*, 217 F.3d 1234, 1240-43 (9th Cir. 2000) (holding "that an action is cognizable as an adverse employment actions if it reasonably likely to deter employees from engaging in protected activity"); *see Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 848 (9th Cir. 2004) (finding that a warning letter placed in plaintiff's personnel file "still constitutes an adverse employment action"); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment actions'").  Thus, the February, July, and December 2006 notices all constitute adverse employment actions.

The only remaining issue at the prima facie stage is whether a causal link exists between

PAGE 14 - OPINION AND ORDER

plaintiff's protected activity and the adverse employment actions.  At summary judgment,
however, temporal proximity between protected activity and a retaliatory action is enough to
support causation.  *Yartzoff*, 809 F.2d at 1376 ("Causation sufficient to establish . . . [a] prima
facie case may be inferred from circumstantial evidence, such as the employer's knowledge that
the plaintiff engaged in protected activities and the proximity in time between the protected
action and the allegedly retaliatory [activity]."); *Scott v. Sears, Roebuck & Co.*, 395 F. Supp. 2d
961, 981 (D. Or. 2005) ("based on timing alone, a genuine issue of material fact [exists] on the
causal relationship between the [protected activity] and [plaintiff's] termination.").  Given
plaintiff's apparently continuous complaints to management about inappropriate workplace
behavior, there is temporal proximity between protected activity and each adverse employment
action.

 Defendant argues that it had legitimate reasons for issuing each PIN to plaintiff: in
February 2006 because plaintiff's cash drawer was short, in July 2006 because co-workers had
complained about plaintiff's poor attitude, and in December 2006 because plaintiff cursed at
Strobel.

 Plaintiff has established a genuine issue of material fact as to whether the reasons
advanced by defendant are pretextual.  For instance, defendant admits that it disciplined plaintiff
in July 2006 for speaking negatively about defendant and its employees.  Plaintiff, however,
claims that the only negative comments she ever made about defendant or her co-workers were
in reference to the discriminatory environment at the Tanasbourne branch.  Although this court
has concluded that plaintiff's discrimination claims are unsupported, employees are protected
against retaliation "whenever the opposition is based on a 'reasonable belief' that the employer

PAGE 15 - OPINION AND ORDER

has engaged in an unlawful employment practice." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983).

Viewing the facts in the light most favorable to the non-moving party, a jury could conclude that plaintiff was disciplined for voicing concerns about workplace discrimination. Therefore, the court denies defendant's motion as to plaintiff's retaliation claims under the ADEA, Title VII, and O.R.S. 659A.

### 4.      Plaintiff's Wrongful Discharge Claim

Plaintiff claims that she was wrongfully discharged for complaining about unwelcome behavior and comments.  Under Oregon common law, an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement.  *Patton v. J.C. Penney Co.*, 719 P.2d 854, 856 (Or. 1986).  The tort of wrongful discharge is a narrow exception to this general rule.  *See Sheets v. Knight*, 779 P.2d 1000, 1006 (Or. 1989).  Oregon courts have recognized two circumstances that give rise to this tort: (1) discharge for performing a public duty or fulfilling a societal obligation and (2) discharge for exercising an important job-related right.  Examples of the first category include discharge for serving on jury duty, *Nees v. Hocks*, 536 P.2d 512 (Or. 1975); for reporting patient abuse at a nursing home, *McQuary v. Bel Air Convalescent Home, Inc.*, 684 P.2d 21 (Or. Ct. App. 1984); and for refusing to sign a false and potentially defamatory statement about a coworker, *Delaney v. Taco Time Int'l*, 681 P.2d 114 (Or. 1984).  Examples of the second category include discharge for resisting sexual harassment by a supervisor, *Holien v. Sears, Roebuck & Co.*, 689 P.2d 1292 (Or. 1984), and for filing a workers' compensation claim, *Brown v. Transcon Lines*, 588 P.2d 1087 (Or. 1978).  To prevail in a wrongful discharge case, a plaintiff must show that her protected activity was a "substantial factor" in her termination.  *Holien*, 689 P.2d at 1299 n.5.

PAGE 16 - OPINION AND ORDER

Plaintiff argues that by complaining about prohibited behavior, she was exercising an employment-related right of public interest. An employment-related right is a "personal benefit or right to which the employee is entitled as a matter of public policy." *Brown v. Bd. of. Educ.*, 139 P.3d 1048, 1052 (Or. Ct. App. 2006). Oregon courts have stated that "sexual harassment on the job is a forbidden discriminatory act under state and federal law and an employee has a legal right which is of important public interest not to be discharged for resisting sexual harassment." *Holien*, 698 P.2d at 1300. Further, "it is not the supervisor's demand, or discriminatory sexual harassment, for which plaintiff seeks common law tort damages; it is for a tortious discharge following her rightful resistance to those demands or harassment." *Id.*

Plaintiff alleges that she complained about prohibited conduct, including sexual and ageist comments made by co-workers. While the court has dismissed plaintiff's claim for hostile work environment because the alleged instances of harassment were either not motivated by plaintiff's sex or were not sufficiently severe or pervasive, the court has allowed plaintiff's claim for retaliation because genuine issues of material fact exist as to plaintiff's alleged protected activity. As stated by the court in *Holien*, it is the reporting of such unwanted conduct that gives rise to a claim for wrongful discharge for exercising an employment-related right, not the underlying act of alleged sexual harassment.

Even if a wrongful discharge claim is recognized, an employee must show a causal connection between the protected activity engaged in and the discharge. *Shockey v. City of Portland*, 837 P.2d 505, 509-10 (Or. 1992). The Oregon courts apply a substantial-factor test that requires an employee to show the protected activity was a "factor that made a difference" in the discharge decision. *Estes v. Lewis & Clark Coll.*, 954 P.2d 792, 797 (Or. Ct. App. 1998). Temporal proximity alone can support a causal inference when there is a short period between

PAGE 17 - OPINION AND ORDER

the protected activity and the alleged retaliation. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). As explained above, viewing the evidence in the light most favorable to plaintiff, plaintiff's alleged numerous complaints, coupled with the close temporal proximity between her complaints and several warnings and reprimands, is enough to establish a causal connection between her protected activity and adverse employment actions.

> **5.** **Plaintiff's Intentional Infliction of Emotional Distress Claim**

Plaintiff also claims that defendant is responsible for the intentional infliction of emotional distress ("IIED"). To succeed on a claim for IIED in Oregon, a claimant must demonstrate: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995). "Because proof of intent is often indirect and evidence of psychic harm is usually self-serving, proof of this tort largely turns on the second element, whether a defendant's conduct is sufficiently outrageous." *House v. Hicks*, 179 P.3d 730, 736 (Or. Ct. App. 2008). Whether conduct is an extraordinary transgression is a fact-specific inquiry, based on the totality of the circumstances. *Id.*

Even viewing the facts in the light most favorable to plaintiff, defendant's conduct was not sufficiently outrageous to support an IIED claim. This court has already ruled that plaintiff's allegations of discrimination and harassment are unsupported. *Id.* at 737 (observing that "the illegality of defendant's conduct is relevant to, but not determinative of, whether the conduct is sufficiently outrageous to support an IIED claim"). More importantly, defendant's conduct does not rise to the level of egregiousness required by Oregon courts. *See Mains v. II Morrow*, *Inc.*, 877 P.2d 88, 89-90 (Or. Ct. App. 1994) (upholding IIED claim when a male supervisor told

plaintiff she was "'just another worthless woman,'" uttered comments like "'lick my balls,'" and physically harassed plaintiff); *Lathrope-Olson v. Oregon Dept. of Transp.*, 876 P.2d 345, 346 (Or. Ct. App. 1994) (concluding that conduct was sufficiently outrageous when male co-workers threatened to push plaintiff into oncoming traffic, "repeatedly locked plaintiff out of the crew van when it was raining or snowing and no other shelter was near," and told plaintiff that "'all women were good for was between their legs.'").

Considering the totality of the circumstances–including the drawing of the penis and the use of words like "ho" and "bitch" by female employees–defendant did not engage in an extraordinary transgression of the bounds of socially tolerable conduct. Although the court does not condone the behavior of defendant's employees, Oregon case law demands a greater showing of outrageousness to withstand summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [20] is GRANTED in part and DENIED in part. Defendant's motion is GRANTED as to plaintiff's disparate treatment and hostile work environment claims brought pursuant to 29 U.S.C. § 621 *et seq.* (ADEA), 42 U.S.C. § 2000e *et seq.* (Title VII), and O.R.S. 659A.030 and to plaintiff's state intentional infliction of emotional distress claim. Defendant's motion is DENIED as to plaintiff's retaliation claim brought pursuant to 29 U.S.C. § 621 *et seq.*, 42 U.S.C. § 2000e *et seq.*, and O.R.S. 659A.030 and to plaintiff's state wrongful discharge claim.

IT IS SO ORDERED.

DATED this  14  day of August, 2008.

                    /s/ Ancer L. Haggerty

PAGE 19 - OPINION AND ORDER

Ancer L. Haggerty
United States District Judge

PAGE 20 - OPINION AND ORDER